IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MAZZELLA LIFTING TECHNOLOGIES, INC., *et al.*, | CASE NO. 1:24-cv-1869 |
| Plaintiffs, | DISTRICT JUDGE CHARLES ESQUE FLEMING |
| vs. | MAGISTRATE JUDGE JAMES E. GRIMES JR. |
| WILLIAM J. BERRYMAN, *et al.*, | |
| Defendants. | **REPORT AND RECOMMENDATION** |

Plaintiffs Mazzella Lifting Technologies, Inc. and Mazzella Holding Company, Inc., have filed a Motion to Enforce Agreement with pro se Defendant Eric Kropp, a Tennessee resident. Docs. 22, 25.[1] The Court referred to me this Motion for the preparation of a report and recommendation. *See* Order, 1/6/2025. For the reasons explained below, I recommend that the Court grant in part and deny in part Mazzella's Motion.

**Procedural background**

In October 2024, Mazzella filed a Verified Complaint and a Motion for temporary restraining order (TRO) and preliminary injunction against its former employees, Defendants William J. Berryman, Robert Joseph Ivey, Eric Kropp, and Carey Riddle, and the company that then employed them, Noble Crane & Rigging, LLC. Docs. 1, 2. Mazzella alleges that the defendants have

---

[1]     Mazzella filed a redacted version of its motion, Doc. 22, and, with leave of Court, an unredacted version with accompanying exhibits, Doc. 25.

misappropriated under Federal and Ohio law its trade secrets, and that the individual defendants have breached their non-compete and non-solicitation agreements.[2] Doc. 1, at 19–26.

The Court referred to me Mazzella's TRO Motion for a Report and Recommendation. *See Order*, 10/28/2024; *see also* Local Rule 72.2(a). I set a briefing schedule and a hearing via videoconference on the Motion. *See Notice*, 10/30/2024. Before the hearing, counsel for Mazzella and counsel for Berryman, Riddle, and Noble Crane advised that they had resolved their portion of the TRO, *see* Minute Order, 10/31/2024, and Mazzella thereafter filed a Notice stating that these parties had resolved the TRO and preliminary injunction motion, Doc. 16.

So I held the hearing as to Mazzella's TRO motion against Defendants Ivey and Kropp, who both appeared pro se. Ivey and Kropp did not submit briefs, but they each provided oral argument at the hearing. At the conclusion of the hearing, I provided the parties with an opportunity to resolve the matter themselves, and, thereafter, Mazzella reached an agreement with Ivey. *See* Doc. 13. Mazzella requested more time to resolve the motion as to Kropp, Doc. 14, which I granted, *see* Order, 11/6/2024. The next day, November 7, Mazzella filed a Notice stating that it reached an agreement with Kropp as to the TRO and preliminary injunction motion. Doc. 15.

---

[2] Mazzella asserts additional, related state-law claims. Doc. 1, at 26–31.

On December 31, Mazzella filed a Motion to enforce its agreement with Kropp. Docs. 22, 25. I ordered Mazzella to show that it had served Kropp with its Motion in compliance with the Federal Rules of Civil Procedure.[3] *See* Order, 1/7/2025. On January 10, Mazzella filed on the docket a Notice of service to Kropp of its complaint and injunctive relief motion by process server, Doc. 30-1, and its Motion to enforce and supporting papers by FedEx and email,[4] Doc. 30 at 2.

On January 13, I issued an Order instructing Kropp to file any response to Mazzella's Motion to enforce by January 27. *See* Order, 1/13/2025 (sent by United States Mail to Kropp at his home address). I suggested that Kropp consult the *Guide for Pro Se Litigants* available on the Northern District of Ohio's website and I provided him with this web address. *Id*. And I warned him that his failure to respond to Mazzella's motion would mean that "the Court will consider the motion unopposed." *Id*. Kropp has not responded to Mazzella's motion and the time for him to do so has passed.[5]

---

[3]    I noted that Mazzella had served Kropp with the motion to enforce by email, but that it hadn't indicated that Kropp had agreed in writing to receive service by email as required by Federal Rule of Civil Procedure 5(b)(2)(E).

[4]    Mazzella stated that Kropp had verbally requested that it "sen[d] him case filings and other documents relating to this case via email," but after the parties negotiated their settlement agreement Kropp "stopped responding to Plaintiffs' counsels' emails and phone calls." Doc. 30 at 2.

[5]    On January 31, Kropp filed an Answer to the Complaint. Doc. 33. To the extent that any allegations in this filing could be construed as a response to Mazzella's Motion to enforce, I consider them below.

On January 30, I issued an Order raising a choice-of-law issue. Doc. 32. I observed that in its Motion to enforce, Mazzella relied on Ohio law to support its breach of settlement agreement and attorneys' fee arguments, but that it was not apparent from the record that Ohio law would apply. *Id*. I therefore instructed Mazzella to brief this issue and I set a briefing schedule. *Id*. Mazzella timely filed a brief with a choice-of-law analysis. Doc. 34. It maintains that Ohio law governs the settlement agreement and that, even if Tennessee law were to govern, the outcome would be the same—Kropp breached the settlement agreement and Mazzella is entitled to attorneys' fees it incurred for seeking to enforce the agreement. Doc. 34 at 3–11. Kropp has not filed a responsive brief and the time for him to do so has passed.

**Factual background**[6]

This is a dispute about Mazzella's former employees and the employees' alleged violation of the parties' non-compete agreements.

Mazzella manufactures, distributes, and services cranes and similar lifting-related equipment. Doc. 1, at 5, ¶15. It is an Ohio corporation conducting business in other states, including Alabama and southern Tennessee. *Id*. at 2, ¶2.

Berryman, an Alabama resident, worked for Mazzella from November 2016 to April 2022 as a "Lifting Specialist/Account Manager … in the northern

---

[6]    The background facts are taken from Mazzella's Verified Complaint, Doc. 1. I have omitted facts about the other defendants except when necessary to provide context.

4

Alabama, northern Mississippi, and southern Tennessee" region. *Id*. at 7, ¶24. As a condition of employment, Berryman executed "a Non-Competition, Non-Solicitation, and Non-Disclosure Agreement" (the "Agreement"), which contained a one-year "noncompetition, non-solicitation, non-disclosure, non-servicing[,] and confidentiality" provision. *Id*. at 8, ¶28; Doc. 1-1 (Agreement). Berryman's separation from Mazzella in April 2022 meant that his non-compete expired in April 2023, but he agreed to extend it until October 26, 2023. Doc. 1, at 14, ¶42.

In 2023, Berryman founded Noble Crane. Doc. 1, at 3, ¶7. Noble Crane "specializ[es] in providing comprehensive maintenance services for industrial overhead crane and rigging equipment." *Id*. at 3–4, ¶7. It is a "direct competitor" of Mazzella. *Id*. at 1, ¶3.

Meanwhile, Kropp worked for Mazzella from 2018 until April 17, 2024, as a field service technician and then as a branch manager in Knoxville Tennessee. *Id*. at 3, ¶5, at 6, ¶22. His area covered Tennessee, Kentucky, and northern Alabama. *Id*. at 6, ¶22. As a condition of employment, Kropp signed a copy of Mazzella's non-compete Agreement. *Id*. at 8, ¶28. The Agreement prohibits Kropp from competing with Mazzella for one year within a 100-mile radius of Kropp's home base. Doc. 1-4 at 3–4. It also defines *confidential information* as the names and contact information of actual and potential customers, and states that Kropp may not use or disclose this information for any purpose after his employment with Mazzella ends. *Id*. at 1–3.

Shortly after separating from Mazzella, Kropp started working for Noble Crane "in the same region where [he] worked for Mazzella." Doc. 1 at 5, ¶18; at 14, ¶44. Mazzella alleges the following:

- On April 17, 2024, [Kropp's last day with Mazzella,] Defendant Kropp sent over 100 of Plaintiffs' customer and business contacts from his Plaintiffs-issued cell phone to his personal cell phone.

- On April 17, 2024, Defendant Kropp researched, "What does iCloud back up?" on his Plaintiffs-issued cell phone.

- On or about June 13, 2024, Defendant Kropp from his Noble Crane email address engaged in direct communications with G.M., a representative of Plaintiffs' customer B.M.T., to provide quoting for crane and hoist equipment in direct violation of his non-competition and nonsolicitation obligations under his NCNSNDA.

- On or about September 22, 2024, Defendants Kropp and Ivey as employees of Defendant Noble Crane signed a visitor log at Plaintiffs' customer, H.I., worksite and engaged in solicitation of the customer.

Doc. 1, at 16–18.

In April, June, and July 2024, Mazzella sent a series of letters to Kropp, Berryman, Noble Crane, and Ivey, respectively. Doc. 1, at 14–15. An April letter to Kropp reminded him of his Agreement obligations, Doc. 1-5, and a June letter to Kropp advised that he was violating his Agreement, Doc. 1-7. Kropp responded via email to the April letter "with a copy of the Federal Trade Commission's Final Rule intended to ban all noncompete agreements … and the message '*Nuts!*'" *Id*. at 14. He did not respond to a June letter and none of the others responded to any of the letters. *Id*. at 15.

6

Mazzella alleges that "[s]ince the unlawful acts of Defendants began, [it] ha[s] lost a significant portion of its long-standing and repeat business with, upon information and belief, at least 6 to 7 customers." Doc. 1, at 19, ¶6–7. Mazzella's TRO Motion sought to enjoin Kropp from "directly or indirectly providing services or assistance" to Noble Crane, Berryman, Riddle, and any of Mazzella' competitors within the 100-mile-radius prohibited territory described in the non-compete agreement. Doc. 10, at 2. It also sought to prevent Kropp from using or disclosing any of Mazzella's trade secrets or confidential information. *Id*. On November 7, Mazzella and Kropp reached an agreement resolving the TRO and preliminary injunction motion. Doc. 15. This is the agreement that Mazzella seeks to enforce. Doc. 25.

In its Motion to enforce this agreement, Mazzella alleges that Kropp has breached the portion of the agreement requiring him to turn over to a mutually agreed-upon forensic expert his cell phone and provide access to his personal email account. Doc. 25 at 2. Kropp also agreed to search his personal computer and provide to the forensic expert copies of any business-related records that Kropp may have had and to verify that he retained no hard copies. *Id*. Kropp was supposed to do these things by November 17—ten days after he signed the settlement agreement. *Id*.; Doc. 25-2 at 5. Not only has Kropp not done these things, Mazzella alleges, he has also stopped responding to Mazzella's counsel's efforts to communicate with him by email and telephone. *Id*. at 3; Doc. 22-2, at 1–2 (declaration of Mazzella's attorney).

**The Court has jurisdiction to enforce the settlement agreement**

"[B]efore entry of judgment or dismissal, district courts have jurisdiction over the subject matter of the cases pending before them and 'retain the inherent power to enforce agreements entered into in settlement of litigation pending before them.'" *Jaynes v. Austin*, 20 F. App'x 421, 424 (6th Cir. 2001) (quoting *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1371 (6th Cir. 1976) and citing *Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988)). Here, there has been no entry of judgment or dismissal and this case remains pending on the docket of this Court. So I recommend that the Court find that it has subject matter jurisdiction to entertain Mazzella's motion and to enforce the terms of the parties' settlement agreement. *See Jaynes*, 20 F. App'x at 424.

**Tennessee law governs the settlement agreement**

Because this is a diversity action, the law of the forum state, including its choice-of-law rules, apply.[7] *See Montgomery v. Wyeth*, 580 F.3d 455, 459 (6th Cir. 2009) (citing *Uhl v. Komatsu Forklift Co.*, 512 F.3d 294, 302 (6th Cir. 2008)). So the choice-of-law question here is governed by Ohio law.

The parties' settlement agreement does not contain a governing-law provision. Doc. 25-2. Mazzella argues that the underlying contract that is the

---

[7]     In its Complaint, Mazzella also alleges that this Court has federal subject matter jurisdiction under 28 U.S.C. § 1331. Doc. 1 at 4. This doesn't change the Court's choice-of-law analysis because "[a] federal court exercising supplemental jurisdiction over state law claims is bound to apply the law of the forum state to the same extent as if it were exercising its diversity jurisdiction." *German Free State of Bavaria v. Toyobo Co.*, 480 F. Supp. 2d 948, 955 (W.D. Mich. 2007) (citations omitted).

basis for this lawsuit contains a provision stating that Ohio law governs. Doc. 34 at 3. But the contract at issue here is the parties' settlement agreement to resolve the TRO and preliminary injunction motion, not the underlying contract that is the basis for this still-pending lawsuit. And the fact that the settlement agreement references this lawsuit in the Northern District of Ohio, Doc. 25-2 at 1, doesn't amount to a governing-law provision, as Mazzella suggests, Doc. 34 at 3. Notably, Mazzella hasn't cited legal authority in support of either of these arguments. *See* Doc. 34 at 3.

Because the parties' settlement agreement contains no governing-law provision, this Court, per Ohio law, evaluates the factors set out in Section 188 of the Restatement (Second) of Conflict of Laws to determine which state's law should govern. *See Tocci v. Antioch Univ.*, 967 F. Supp. 2d 1176, 1192 (S.D. Ohio 2013) (citing *Ohayon v. Safeco Ins. Co. of Illinois*, 747 N.E.2d 206 (2001), and *Power–Tek Solutions Servs., LLC v. Techlink, Inc.*, 403 F.3d 353 (6th Cir. 2005)), *aff'd* No. 13-4123, 2014 U.S. App. LEXIS 25176 (6th Cir. June 10, 2014).

> First, Section 188 states that "[t]he rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties" to the contract. *Id*. Second, Section 188 lists the factors a court should consider to determine the state with most significant relationship: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil[e], residence, nationality, place of incorporation and place of business of the parties." *Id*. § 188(2). Each of the foregoing factors should "be

> evaluated according to their relative importance
> with respect to the particular issue." *Id*. § 188(2)(e).

*Tocci*, 967 F. Supp. 2d at 1192. In my briefing Order, I suggested that Tennessee law may govern the parties' agreement, Doc. 32 at 1, and instructed Mazzella to "explain[] what state law should apply to its Motion to enforce settlement agreement." *Id*. at 2. Mazzella raises in its brief two possibilities—Ohio law and Tennessee law. Doc. 34. So I evaluate the Section 188 factors to determine whether Ohio law or Tennessee law governs the parties' settlement agreement.

The first factor, the place of contracting, favors Ohio. "The place of contracting is determined by the last act necessary for a contract to be binding." *Tocci*, 967 F. Supp. 2d at 1192 (quoting *Riddle v. Wiegand*, No. CA2002–12–027, 2003 WL 21373159 at *4 (Ohio Ct. App. June 16, 2003) (in turn citing Restatement, *supra*, § 188, cmt. e). Mazzella signed the agreement six days after Kropp, Doc. 25-2 at 5, 8–9, so Mazzella performed the "last act" in Ohio. The significance of second factor, the place of negotiation of the contract, "is diminished 'when there is no one single place of negotiation and agreement, as, for example, when the parties do not meet but rather conduct their negotiations from separate states by mail or telephone.'" *Tocci*, 967 F.Supp.2d at 1193 (citing § 188, cmt. e). Here, the parties in Ohio and Tennessee negotiated by email, videoconference, and telephone, *see* Doc. 25-2 at 8–9, Doc. 34 at 5, so the second factor favors neither state.

10

The third factor, the place of performance, favors Tennessee. Kropp, a Tennessee resident, was to turn over his phone and email account to a near-to-him forensic expert. Although Mazzella now states that this could have been achieved "remotely," including in Ohio, Doc. 34 at 6, correspondence shows that even Mazzella expected Kropp to locate a forensic expert near him. Doc. 25-3 at 3. Kropp was also expected to search his personal computer, which, presumably, he keeps at his residence in Tennessee, and to execute an affidavit. *Id.* at 4. Of the list of customers that the settlement agreement prohibits Kropp from contacting, none are in Ohio. *Id.* at 6–7. Some are in Georgia (five) and Alabama (ten), but most are in Tennessee (twenty-three). *See, e.g., Thiesing v. Dentsply Int'l, Inc.*, 748 F. Supp. 2d 932, 941 (E.D. Wis. 2010) (finding that Section 188's third and fourth factors favored the state within the former employee's sales territory in which the employee had the most accounts). And Mazzella doesn't allege that Alabama or Georgia law should govern the settlement agreement. Meanwhile, the only act Mazzella had to undertake under the settlement agreement was to withdraw its TRO and preliminary injunction motion. Doc. 25-2 at 5. In all, Kropp was to perform most of the settlement-agreement acts in Tennessee.[8]

The fourth factor is the location of the subject matter of the contract. Mazzella asserts that its trade secret information is stored on and taken from

---

[8]    Mazzella cites no legal authority for its assertion that, because Mazzella was "the only party who has performed its obligation under the Confidential Agreement," the third factor favors Ohio. Doc. 34 at 5.

its networks and servers in Ohio. Doc. 34 at 6. But Tennessee has the closer connection here. Restatement (Second) of Conflict of Law § 188, cmt. e describes the fourth factor as follows:

> When the contract deals with a specific physical thing, such as land or a chattel, *or affords protection against a localized risk, such as the dishonesty of an employee in a fixed place of employment, the location of the thing or of the risk is significant.*

Section 188, cmt. e (emphasis added). Here, the localized risk is Kropp in Tennessee (1) not turning over his devices that allegedly contain confidential information, and (2) contacting Mazzella's clients, most of whom are located in Tennessee. So this factor favors Tennessee. *See, e.g., Cardoni v. Prosperity Bank*, 805 F.3d 573, 583 n.10 (5th Cir. 2015) (finding that under Section 188, Oklahoma had more significant contacts than Texas when the employees performed most of their work for the Texas-based company in Oklahoma, rejecting the Texas company's argument that its Texas-located computer systems accessed by the employees weighed more heavily in its favor).

Finally, the fifth factor—the parties' residence, place of incorporation, and place of business—slightly favors Tennessee. Mostly, "a corporation's principal place of business is a more important contact than the place of incorporation," and "the fact that one of the parties is domiciled or does business in a particular state assumes greater importance when combined with other contacts." Restatement, *supra*, §188, cmt. e. Mazzella is an Ohio corporation, but it "conducts business throughout the United States of

America, including … Alabama and Tennessee." Doc. 1 at 2,¶¶1, 2. And Kropp is a Tennessee resident. The business Mazzella conducts in Tennessee assumes greater importance combined with other contacts, described above.

In all, the choice-of-law factors weigh in favor of Tennessee as the state with the most significant relationship to the parties and the settlement agreement. I therefore recommend that the Court find that Tennessee law governs the parties' settlement agreement.

### The settlement agreement is valid and no hearing is required

Before enforcing a settlement agreement, the court "must conclude that agreement has been reached on all material terms." *RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 645–46 (6th Cir. 2001) (citing *Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988)). This is a question of state contract law. *See Hull v. Gold Sheep, LLC*, No. 3:23-cv-00244, 2024 WL 1349028, at *5 (M.D. Tenn. Mar. 28, 2024) (citing *Cuyahoga Valley Ry. Co. v. U.S. Bank Trust Nat'l Ass'n*, 515 F. App'x 494, 498 (6th Cir. 2013)), *report and recommendation adopted*, 2024 WL 1722674 (M.D. Tenn. Apr. 22, 2024). "Under Tennessee law, a contract is simply 'an agreement between two parties, based on adequate consideration, to do or not to do a particular thing.'" *Id*. (citing *Bill Walker & Assocs., Inc. v. Parrish*, 770 S.W.2d 764, 771 (Tenn. Ct. App. 1989)). A valid contract:

> may be either express or implied. It may be written or oral. It must result from a meeting of the minds of the parties in mutual assent to its terms. It must be founded on a sufficient consideration. It must be

> mutual, free from fraud or undue influence, not
> against public policy, and sufficiently definite.

*Id.* (quoting *Am. Lead Pencil Co. v. Nashville, Chattanooga & St. Louis Ry.*, 134 S.W. 613, 615 (Tenn. 1911)).

"Ordinarily, an evidentiary hearing is required where facts material to an agreement are disputed." *RE/MAX Int'l,* 271 F.3d at 646 (citing *Kukla v. Nat'l Distillers Prods. Co.*, 483 F.2d 619, 622 (6th Cir. 1973) and *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1371 (6th Cir. 1976)). But "no evidentiary hearing is required where an agreement is clear and unambiguous and no issue of fact is present." *RE/MAX Int'l,* 271 F.3d at 646 (citing *Aro Corp.*, 531 F.2d at 1372); *Anglo-Danish Fibre Indus., Ltd. v. Columbian Rope Co.*, No. 01-2133, 2002 WL 1784490, at *4 (W.D. Tenn. June 21, 2002) (citing *RE/MAX, supra*). "Thus, summary enforcement of a settlement agreement has been deemed appropriate where no substantial dispute exists regarding the entry into and terms of an agreement." *RE/MAX Int'l*, 271 F.3d at 646 (citing *Kukla*, 483 F.2d at 621).

Here, the parties did not request an evidentiary hearing. *See RE/MAX Int'l*, 271 F.3d at 646 (stating that no hearing was held on the motion to enforce the settlement agreement "because neither party requested one."). Kropp has not disputed the validity of the settlement agreement. The parties had a meeting of the minds when they agreed to settle their dispute over injunctive relief and signed the agreement, Doc. 25-2 at 5, 8; *see Hull*, 2024 WL 1349028, at *5 (a "meeting of the minds is judged by an objective standard, from the

14

express words of the parties and their visible acts") (citation omitted); *Hardy v. Hershey Co.*, No. 2:18-cv-2210, 2019 WL 4723812, at *3 (W.D. Tenn. Sept. 26, 2019) ("The parties mutually assented to the terms as evidenced by their signatures."). The agreement states what each side will do in exchange for entering into the agreement. Doc. 25-2. And the terms are sufficiently definite. *Id.* I recommend that the Court find that the parties have a valid agreement and that a hearing is not required.

**Mazzella has shown that Kropp breached the agreement**

"[A] settlement agreement made during the course of litigation is a contract between the parties, and as such, contract law governs disputes concerning the formation, construction, and enforceability of the settlement agreement." *Summit Process Design Inc. v. Hemlock Semiconductor, L.L.C.*, No. 3:17-cv-01208, 2017 WL 6524521, at *3 (M.D. Tenn. Dec. 21, 2017) (quoting *Waddle v. Elrod*, 367 S.W.3d 217, 222 (Tenn. 2012)). To prevail, Mazzella must show "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." *Id.* (quoting *ARC LifeMed, Inc. v. AMC–Tennessee, Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005)).

Mazzella has shown that the settlement agreement is an enforceable contract, as explained above. As for nonperformance, the agreement states that ten days after signing the agreement, Kropp was to "turn over to a mutually agreed upon forensic expert his cell phone [and] provide access to his personal

15

email account," which the agreement identifies. Doc. 25-2 at 4. Kropp was to "verify via affidavit or sworn declaration"—a draft of which Mazzella supplied, Doc. 25-3 at 10–11—"that he has thoroughly searched his personal computer and provided the forensic neutral all copies of any business-related records and that [he] does not possess any hard copy documents or physical files containing Mazzella's Confidential Information," Doc. 25-2 at 4–5. And emails exchanged after the parties signed the agreement show that Mazzella provided guidance to Kropp for locating a forensic expert, Doc. 25-3 at 3, whose services Mazzella would pay for, Doc. 25-2 at 4. Mazzella asserts that Kropp hasn't complied with the above-stated terms of the parties' settlement agreement. Doc. 25 at 4.

Kropp didn't file a response to Mazzella's motion. But he did file an Answer to the Complaint, Doc. 33, which I will generously construe as a response to Mazzella's motion.

In his Answer, Kropp briefly addresses the parties' settlement agreement:

> I signed an agreement with Mazzella on November 7, 2024. They had 10 days from the date I signed the document to access my personal phone and access my Gmail account in exchange for an agreement to withdraw pending Motion for Temporary Restraining Order. They failed to act within the ten-day time frame. Later I found that they attempted to contact me via my Gmail account on the 20th of November.

Doc. 33 at 3. To the extent that Kropp alleges Mazzella "failed to act within the ten-day time frame" for accessing Kropp's phone and email account, this is only

16

so because Kropp didn't turn over these materials to a forensic expert, as he had agreed to do. *See* Doc. 25-2 at 4; Doc. 25-3 (unanswered emails that Mazzella's counsel sent to Kropp regarding the search of Kropp's phone and email account). For its part, Mazzella timely withdrew its pending TRO and preliminary injunction motion—it filed a notice on the docket doing so the same day that Kropp signed the agreement. Doc. 25-2 at 5; Doc. 15. And Kropp doesn't explain the significance of his alleged and undated "late[]" discovery of Mazzella's November 20 email—and he has not stated that he has since complied with the terms of the settlement agreement.

Elsewhere in his Answer, Kropp states that he has "looked through [his] documents and devices and … found no Mazzella trade secrets or confidential information." Doc. 33 at 2–3. But the settlement agreement required Kropp to take his cell phone to a forensic expert, Doc. 25-2 at 4, not to "look[] through" it himself. And he was to say "via affidavit or sworn declaration" that he searched his computer, *id.*, but his Answer is not verified, Doc. 33 at 8. So Kropp's allegations in it do not satisfy the "affidavit or sworn declaration" requirement even if one overlooks the lateness of the allegations and any other potential deficiency. *See Fox v. Faison*, 668 F. Supp. 3d 751, 761 (M.D. Tenn. 2023) ("In the abstract, an allegation can be 'verified' in many ways, but the term, as used in the Federal Rules, typically refers to the practice of augmenting a pleading with an additional signed statement indicating that the assertions therein have been made under penalty of perjury") (citing 28

U.S.C. § 1746 and Wright & Miller, 5A Fed. Prac. & Proc. Civ. § 1339 (4th ed.)). All told, Mazzella has shown that Kropp failed to perform this portion of the parties' settlement agreement and, therefore, that he has materially breached the agreement.

Finally, Kropp's breach damaged Mazzella because Mazzella has alleged that Kropp possesses its confidential information. *See, e.g.,* Doc. 1 at 16–23. For all of these reasons, I recommend that the Court find that Kropp has breached the parties' settlement agreement.

**Mazzella is not entitled to attorneys' fees**

"Tennessee, like most jurisdictions, adheres to the 'American rule' for award[ing] attorney fees." *Summit Process Design*, 2017 WL 6524521, at *3 (quoting *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009)). "Under the American Rule, a party in a civil action may recover attorney fees only where: '(1) a contractual or statutory provision creates a right to recover attorney fees; or (2) some other recognized exception to the American rule applies, allowing for recovery of such fees in a particular case.'" *Id*. (quoting *Cracker Barrel*, 284 S.W.3d at 308).

Here, the parties' settlement agreement contains no attorneys' fee provision. Doc. 25-2. Mazzella resists this conclusion. It points out that Kropp's 2018 non-compete agreement contains an attorneys' fee provision. Doc 24 at 9; *see* Doc. 1-4 at 4. But the agreement that Mazzella seeks to enforce here is the parties' November 2024 settlement agreement on injunctive relief, not Kropp's

2018 non-compete agreement. Whether Kropp breached that 2018 non-compete agreement remains an issue to be determined in this still-pending lawsuit. For this same reason, Mazzella's assertion that its October 2024 complaint alleges tort claims, Doc. 34 at 10, is not relevant to whether the parties' November 2024 settlement agreement permits Mazzella to recover attorneys' fees for seeking to enforce the agreement. And without a contractual provision, Mazzella must identify a statutory provision that creates a right to recover attorneys' fees on its motion to enforce or "'some other recognized exception to the American rule [that] applies, allowing for recovery of such fees in [this] case.'" *See Summit Process Design*, 2017 WL 6524521, at *3 (citation omitted).

Mazzella has not identified a Tennessee statutory provision entitling it to recover attorneys' fees. And while some states, like Ohio, carve out an exception to the American Rule to permit parties enforcing settlement agreements to recover attorneys' fees, *see Integrity Energy, Ltd. v. Hunter*, No. 1:18-cv-978, 2021 WL 2808689, at *10 (N.D. Ohio July 6, 2021), Tennessee is not one of these states, *see Summit Process Design*, 2017 WL 6524521, at *6–7.

In its brief, Mazzella attempts to distinguish *Summit Process Design* and the Tennessee case that it relied on, *Grace v. Grace*, No. W2016–00650–COA–R3–CV, 2016 WL 6958887 (Tenn. Ct. App. Nov. 29, 2016). Doc. 34 at 9. But Mazzella's attempts in this regard fall short. While Mazzella explains how

19

the facts supporting the courts' rulings denying fees in *Summit Process Design* and *Grace* were different than in this case, it has not explained why the result here should be different. It has not disputed the law recited by these Tennessee cases. It has not cited any Tennessee case or any case in another jurisdiction applying Tennessee law in which a court awarded attorneys' fees to a party seeking to enforce a settlement agreement. Indeed, in *Summit Process Design*, the court rejected the plaintiff's invitation to adopt under Tennessee law a carve-out to the American Rule that—similar to the Ohio rule—would permit parties enforcing settlement agreements to recover attorneys' fees. 2017 WL 6524521 at *7. The court explained:

> The Tennessee Supreme Court has recognized that the American rule is "firmly established" in the state …. While the court finds [Summit's] argument persuasive, Summit has not pointed to any Tennessee case creating an exception to the general rule for this type of situation. And those Tennessee decisions addressing claims for attorney fees—from the Tennessee Supreme Court as well as both published and unpublished decisions from the Tennessee Court of Appeals—strongly suggest that the Tennessee Supreme Court, if confronted with the question, would apply the American rule strictly, awarding attorney fees to an adversary only where they are permitted by statute or contract or where "some other recognized exception to the American rule applies, allowing for recovery of such fees in a particular case." *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009).

*Id*.

Finally, Mazzella submits that district courts retain "inherent powers to impose attorneys' fees upon a party that acts in bad faith, vexatiously,

wantonly, or for oppressive reasons during litigation." Doc. 34 at 10. It submits that this Court should invoke its inherent authority to it award fees because Kropp has demonstrated bad faith. *Id*. In support of its argument, it cites *Tocci*, 967 F.Supp. 2d at 1201, and *Rohrer Corp. v. Dane Elec Corp. USA*, 482 F. App'x 113, 115 (6th Cir. 2012)). *Id*. *Rohrer* doesn't support Mazzella's argument because it discussed whether Ohio law, not a federal court's inherent power, permitted an award of attorneys' fees for a breach of settlement agreement. 482 F. App'x 113. In *Tocci*, the district court invoked its inherent power to award attorneys' fees to a party "related to the [party's] enforcement of the settlement agreement." 967 F. Supp. 2d at 1201–02. The court found:

> Here, Tocci's actions do not comport with mere buyer's remorse. Regrettably, the Court concludes that Tocci's repudiation of the settlement agreement, his post-settlement attempts to impose new terms on Antioch, and the threats, insults, and intransigence that delayed the termination of this litigation demonstrate a degree of vexatious, bad faith conduct that entitles Antioch to an award of attorneys' fees and costs.

*Id*. at 1202; *see also id*. at 1202–03 (describing the threats that Tocci made to the defendants).

Kropp's breach of the parties' settlement agreement, while not commendable, does not rise to the same level of egregiousness as the party in *Tocci*. And Mazzella hasn't identified more relevant cases that would support a fee award here based on the Court's inherent power. So I recommend that

the Court find that Mazzella is not entitled to recover attorneys' fees for enforcing the settlement agreement.[9]

### Conclusion and Recommendation

For all of the foregoing reasons, I recommend that the Court grant in part Mazzella's motion to enforce the parties' settlement agreement, Docs. 22, 25, to the extent that Kropp has breached the parties' settlement agreement. I recommend that the Court deny in part Mazzella's motion to the extent that Mazzella is not entitled to attorneys' fees for seeking to enforce the agreement.

Dated: February 24, 2025

 */s/ James E. Grimes Jr.*
James E. Grimes Jr.
U.S. Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).

---

[9]     Nevertheless, if Kropp's conduct persists, such behavior could rise to the level of sanctionable bad faith. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 54–56 (1991) (explaining that even when an applicable state law prevents a prevailing party from recovering fees for a breach of contract claim, a federal court may sanction a party for its conduct during the litigation—"for the fraud he perpetrated on the court and the bad faith he displayed toward both his adversary and the court throughout the course of the litigation.").